IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KEMIN FOODS, L.C., THE CATHOLIC UNIVERSITY OF AMERICA, <br><br>     Plaintiffs, <br><br> vs. <br><br> PIGMENTOS VEGETALES DEL CENTRO S.A. DE C.V., <br><br>     Defendant. | **No. 4:02-cv-40327** <br><br> **ORDER ON MOTION FOR CLARIFICATION; MOTION FOR PERMANENT INJUNCTION AS SUPPLEMENTED; AND MOTION FOR FEES** |

Currently pending before the Court are Plaintiffs' Motion for Clarification (Clerk's No. 327), Plaintiffs' Motion for Permanent Injunction (Clerk's No. 316), Plaintiffs' Motion for an Order Requiring PIVEG to Provide Samples of Its Purified Lutein Products (Clerk's No. 339) (hereinafter, "Supplement Motion"), and Defendant's Motion for Fees and Costs (Clerk's No. 328).  These motions arose following the jury verdict rendered on September 24, 2004, and the Court's recent Order on Post-Trial Motions filed February 8, 2005 ("Order").[1]  A hearing on these motions, with the exception of Plaintiffs' Supplement Motion,[2] was held on April 1, 2005.  The

---

[1] Available at Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 357 F. Supp. 2d 1105 (S.D. Iowa 2005).

[2] Kemin filed the Supplement Motion on April 11, 2004, just as the Court was ready to issue a ruling on its pending motion for permanent injunction.  In its motion, Kemin suggested the Court, to the extent appropriate, consider the motion a supplement to Kemin's Motion for Permanent Injunction and incorporate the relief

Court considers these motions fully submitted, to the extent discussed herein, and ready for ruling.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs Kemin Foods, L.C. ("Kemin") and the Catholic University of America filed this infringement action against Defendant Pigmentos Vegetales Del Centro S.A. de C.V. ("PIVEG") on July 9, 2002.  Kemin alleged that PIVEG's production of purified lutein infringed Kemin's product protected by U.S. Patent No. 5,382,714 ("the '714 patent") and Kemin's process for producing purified lutein protected by U.S. Patent No. 5,648,564 ("the '564 patent").  As the case proceeded toward trial, the Court entered an order pursuant to 35 U.S.C. § 295 ("the § 295 Order"), wherein the Court determined that, given the lack of conclusive, reliable evidence of PIVEG's actual process for producing purified lutein and Kemin's inability to obtain such evidence through the discovery process due to PIVEG's business practices and foreign corporation status, the burden of proving noninfringement would fall on PIVEG.  In essence, Section 295 establishes a presumption that PIVEG's purified lutein product is made by Kemin's patented process.  This burden-

_____

requested, if granted, in the Permanent Injunction itself.  Finding it prudent to consider this motion a supplement, the Court delayed issuing its order on the permanent injunction motion until Defendant had adequate opportunity to respond to the Supplement Motion.  Defendant has now had opportunity to respond to the Supplement Motion to which Plaintiffs have filed a reply.  Accordingly, the Court now considers this motion fully submitted and ready for ruling.

switching applied solely to the '564 patent infringement claims.  All other pre-trial dispositive motions were denied.

Thereafter, a jury trial was held September 13-23, 2004.  At the conclusion of the trial, the jury rendered a verdict finding no infringement of the '714 patent, infringement of the '564 patent under the doctrine of equivalents, and no invalidity of either the '714 or '564 patents.  In essence, the jury seemingly concluded that neither party carried its burden – Kemin on infringement of the '714 patent, and PIVEG on the validity issues and noninfringement of the '564 patent (at least under the doctrine of equivalents).  The jury awarded damages to Kemin for infringement of the '564 patent, albeit a much smaller amount than requested by Kemin.  Post-trial motions in regard to the verdict have previously been resolved.

## ANALYSIS

Currently pending before the Court are Kemin's Motion for Clarification of Order on Post-Trial Motions, Kemin's Motion to Permanently Enjoin Defendant From Infringing Claims 1 and 2 of U.S. Patent No. 5,648,564, Kemin's Supplement Motion seeking an order requiring PIVEG to provide samples of its products, and PIVEG's Motion for Fees and Costs.

**A.     Motion for Clarification**

Kemin requests clarification of one sentence in the Court's February 8, 2005, Order on Post-Trial Motions.  At page 13 of that Order, the Court stated that "[a]lthough the [*Poultry Science*] article does not discuss the presence of toxic

3

chemicals, the Court finds the composition disclosed does meet each of the limitations

claims in the '714 patent."  Order, at 13.  Kemin believes this statement implies that

the *Poultry Science* article anticipates the '714 patent.  See Schering Corp. v. Geneva

Pharms., Inc., 339 F.3d 1373, 1379 (Fed. Cir. 2003) (recognizing that "a prior art

reference which expressly or inherently contains each and every limitation of the

claims subject matter anticipates and invalidates").

Kemin argues this is inconsistent with the Court's specific findings with respect

to the validity of the '714 patent.  The Court finds later in the Order that the *Poultry*

*Science* article "is not 'highly' material to the '714 patent," and that there was "insuf-

ficient evidence to prove anticipation under the clear and convincing standard."

Order, at 23, 52.  Ultimately, the Court held there was "sufficient evidence to support

the jury's conclusion that the '714 patent was not anticipated."  Order, at 52.

PIVEG initially counters by pointing out the excerpts quoted by Kemin as being

inconsistent are analyzing separate elements of inequitable conduct and are not

necessarily inconsistent.  The Court's finding that the article was not "highly" material

related to the Court's determination of inequitable conduct.  See Baxter Int'l, Inc. v.

McGaw, Inc., 149 F.3d 1321, 1327 (Fed. Cir. 1998) (providing that in inequitable

conduct analysis the court must first make a determination of materiality and intent

and then weigh the respective levels of materiality and intent).  The statement on page

13 that Kemin seeks to have clarified and/or modified is under the section entitled

"Materiality", while the second excerpt is in the section entitled "Balancing of

4

Materiality and Intent".  According to PIVEG, this clearly indicates the Court's first statement constitutes its determination the article is indeed material because it discloses all of the elements while the second excerpt relates to the Court's assignment of weight of the materiality.  In addition, the full excerpt on page 23 goes on to find the article is not enabled.

Furthermore, PIVEG notes there is a different standard of review in the Court's ruling on a renewed motion for judgment as a matter of law from that applicable in reaching factual findings as part of an inequitable conduct analysis.  The Court was required to review the jury's *advisory* findings on the issue of inequitable conduct and then make its own findings on the existence and weight of the elements of inequitable conduct.  See Atlas Powder Co. v. E.I. Du Pont de Nemours & Co., 750 F.2d 1569, 1578 (Fed. Cir. 1984).  Meanwhile, as related to its review of the jury's verdict on the anticipation issue, the standard of review on a renewed motion for judgment as a matter of law merely requires the Court to determine whether there was a complete absence of probative facts to support the jury's conclusion.  See Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 761 (8th Cir. 2003) (quoting Hathaway v. Runyon, 132 F.3d 1214, 1220 (8th Cir. 1997)).  Therefore, PIVEG asserts the Court's determinations and statements are not necessarily inconsistent.

The Court finds its statement at page 13 of its Order on Post-Trial Motions is not inconsistent with later statements or conclusions in the Order.  The Court found

the article disclosed all limitations of the '714 patent as part of its analysis of materiality related to inequitable conduct.  This statement could not accurately be used to argue the Court found the article necessarily or impliedly anticipates the '714 patent.  Indeed, the Court also concluded the *Poultry Science* article was not enabled; therefore, it could not serve as an anticipating reference.  See Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Research, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (finding that to serve as an anticipating reference, the reference must enable that which it is alleged to anticipate); Amgen, Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1354 (Fed. Cir. 2003) ("A claimed invention cannot be anticipated by a prior art reference if the alleged anticipatory disclosures cited as prior art are not enabled.").

Accordingly, the Court finds no inconsistency as claimed by Kemin, and thus no reason exists for clarification and/or modification of the Order.  The Court ultimately concluded there was sufficient evidence to support the jury's verdict on the issue of anticipation, and stated so explicitly, and the Court regards nothing in the Order as inconsistent with that determination.  Individual and discrete statements are not to be used to infer a finding or conclusion that the Order as a whole does not support, and the Order as a whole can support only one conclusion on the issue of anticipation, i.e., that sufficient evidence supports the jury finding that the *Poultry Science* article did not anticipate the '714 patent.  As a result, the Court must deny Plaintiff's Motion for Clarification.

**B.      Motion for Permanent Injunction**

Kemin requests the Court permanently enjoin PIVEG from infringing the '564

patent.  The patent statute authorizes the Court to "grant injunctions in accordance

with the principles of equity to prevent the violation of any right secured by patent, on

such terms as the court deems reasonable."  35 U.S.C. § 283.  Injunctions are gener-

ally granted in patent cases following a finding of infringement.  W.L. Gore &

Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1281 (Fed. Cir. 1988) (noting

"injunctive relief against an adjudged infringer is usually granted . . . [and] an

injunction should issue once infringement has been established unless there is a

sufficient reason for denying it") (citations omitted).

Injunctions protect the essence of patent property rights, i.e., the right to

exclude others from using the patented invention without the owner's permission.  35

U.S.C. § 154(a)(1) ("Every patent shall contain . . . a grant to the patentee . . . of the

right to exclude others from making, using, offering for sale, or selling the invention

throughout the United States . . .").  Indeed, as the Federal Circuit recognized,

> Infringement having been established, it is contrary to the laws of
> property, of which the patent law partakes, to deny the patentee's right
> to exclude others from use of his property.  35 U.S.C. § 261.  "[T]he
> right to exclude recognized in a patent is but the essence of the concept
> of property."  Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1548
> (Fed. Cir. 1983) (citing Schenck v. Norton Corp., 713 F.2d 782 (Fed.
> Cir. 1983)).  It is the general rule that an injunction will issue when
> infringement has been adjudged, absent a sound reason for denying it.
> W.L. Gore & Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1281 (Fed.
> Cir. 1988).

Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1246-47 (Fed. Cir. 1989); accord.

Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("The

very nature of the patent right is the right to exclude others.  Once the patentee's

patents have been held to be valid and infringed, he should be entitled to the full

enjoyment and protection of his patent rights.  The infringer should not be allowed to

continue his infringement in the face of such a holding.").

The decision of whether to grant an injunction is an equitable determination

based on the following factors: (1) success on the merits; (2) the threat of irreparable

harm to the movant; (3) the balance of harms between the harm of infringement and

the injury that granting the injunction will inflict on other parties; and (4) whether the

issuance is in the public interest.  Iowa Protection & Advocacy Servs., Inc. v.

Rasmussen, 206 F.R.D. 630, 634 (S.D. Iowa 2001) (citing Sanborn Mfg. Co. v.

Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 485-86 (8th Cir. 1993) (citing

Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981))).  "'The

standard for granting a permanent injunction is essentially the same as for a prelim-

inary injunction, except that to obtain a permanent injunction the movant must attain

success on the merits,' rather than simply establish a likelihood of success."  Id.

(quoting Bank One v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999) (citations omitted)).

Kemin asserts that under these standards, the circumstances of the present case

compel entry of a permanent injunction.  The Court agrees.

In its motion, Kemin seeks an order

8

permanently enjoining PIVEG and any of its subsidiaries, officers, directors, agents (including attorneys) and employees of any of the foregoing, and those in active concert or participation with any of the foregoing (hereinafter, "PIVEG affiliates") from infringing claims 1 and/or 2 of the '564 patent by making, using, offering to sell, or selling within the United States (including its territories or possessions), or by importing into the  United States (including its territories or possessions) purified lutein products manufactured using the process claimed by claims 1 and 2 of the '564 patent during the unexpired term of the '564 patent, without authorization or license, which includes the PIVEG purified lutein products manufactured by the process or processes employed by PIVEG or its affiliates from July 15, 1997 to September 24, 2004, including, but not limited to: (a) PIVEG's 25% lutein beadlet product; (b) PIVEG's 25 % lutein CWD beadlet product; (c) PIVEG's 5% lutein beadlet product; (d) PIVEG's 20% lutein oil product; and (e) PIVEG's 70% lutein powder product.

Plaintiff's Brief in Support of Motion to Enjoin, at 5-6, 12-13.

In resistance, PIVEG asserts that the Court cannot enter a permanent injunction based on the jury verdict.  In the alternative, PIVEG maintains the Court can only issue an injunction encompassing PIVEG's original process.  PIVEG contends that the injunction Kemin seeks is overbroad as it requires the Court to "assume" the jury found continuous infringement after July 15, 1997, which PIVEG argues is improper.  Accordingly, PIVEG argues Kemin's motion for permanent injunction should be denied.

PIVEG first argues that the Court cannot enter a permanent injunction because the general verdict form submitted to the jury did not identify a specific process that infringes the process protected by the '564 patent.  PIVEG reasserts that it presented evidence of two distinct processes employed by PIVEG during the relevant time

9

period.  PIVEG asserts this situation was recently addressed by the Federal Circuit.

See Int'l Rectifier Corp. v. IXYS Corp., 383 F.3d 1312 (Fed. Cir. 2004) (analyzing

injunction issued against defendant where defendant modified its design of the

accused product two weeks after the infringement suit was filed and admitted several

of its original products violated the patent in suit).

In International Rectifier Corp. v. IXYS Corp., the Federal Circuit noted "the

Supreme Court has denounced broad injunctions that merely instruct the enjoined

party not to violate a statute" and echoed the concern that such overbroad injunctions

increase the likelihood of unwarranted contempt proceedings for "acts unlike or

unrelated to those originally judged unlawful."  Id. at 1316 (citations omitted).  In the

patent infringement context, this means the Court should reject overbroad permanent

injunctions that simply prohibit future infringement of a patent.  Id. at 1316-17

(discussing the form and scope of injunctions and ultimately rejecting as overbroad an

injunction that merely enjoined defendant from "making, using, offering for sale or

selling in, or importing into, the United States, any device covered by one or more of

Claims 1 through 5 of U.S. Patent no. 6,476,481").  Indeed, the Federal Circuit has

found that a permanent injunction violates Rule 65(d) if it fails to "use specific terms

or describe in reasonable detail the acts" which are infringing or "does not limit its

prohibition to the manufacture, use, or sale of the specific infringing device, or to

infringing devices no more than colorably different from the infringing device."

Additive Controls & Measurement Sys. v. Flowdata, Inc., 986 F.2d 476, 479-80

(Fed. Cir. 1993) (citing <u>KSM Fastening Sys., Inc. v. H.A. Jones Co.</u>, 776 F.2d 1522, 1526 (Fed. Cir. 1985)); <u>see also</u> <u>Int'l Rectifier Corp.</u>, 383 F.3d at 1317 (finding that Rule 65(d) "requires an injunction to prohibit only those acts sought to be restrained, which in this case are the infringement of the patent by the devices adjudged to infringe and infringement by devices no more than colorably different therefrom").

PIVEG asserts that Kemin is asking for an overly broad injunction in the present matter based on a general verdict that does not identify a specific process adjudged to infringe. PIVEG contends the jury was presented with evidence of two processes, and the verdict form does not answer which the jury found to be infringing, an issue this Court must answer in any injunction it might enter. PIVEG argues the Court cannot do this on the basis of the answer provided by the jury because the question upon which the jury found infringement allows for numerous scenarios of what the jury adjudged as infringing, an issue PIVEG contends would have been avoided had the Court submitted specific questions as requested. PIVEG further asserts this Court cannot allow Kemin to benefit from opposing such specific questions by assuming the jury adjudicated both processes to be infringing. PIVEG argues that as a result, the Court cannot enter an injunction because it would be based on a general verdict from which the Court cannot determine what process was adjudged infringing.

In the alternative, should the Court believe it must enter a permanent injunction, PIVEG argues the record only supports an injunction of PIVEG's original

11

process.  PIVEG argues that the Court should "assume" the jury understood both processes and that it found only the original process infringed under the doctrine of equivalents.  As support for this, PIVEG points out that its current modified process does not use propylene glycol, an essential element of the '564 patent process which cannot be substituted.  In addition, the jury only awarded damages of about one-third the amount requested.  PIVEG contends this indicates the jury did not and could not find the modified process infringing.

PIVEG further argues that an injunction including all processes used by PIVEG since July 1997 will cause PIVEG to suffer immense hardship and will provide Kemin with exclusive rights to processing purified lutein much broader than provided for in the '564 patent.  In addition, PIVEG argues this result would harm the public interest. Patent rights are secured by the document, which gives notice to the public, <u>see</u> <u>Johnson & Johnson Assocs., Inc. v. R.E. Serv. Co.</u>, 285 F.3d 1046, 1052 (Fed. Cir. 2002), and thus any broadening of those rights by way of an overbroad injunction would inure to the detriment of the public.

Kemin counters that PIVEG cannot use the obfuscation of its actual process and the jury's general verdict as a mechanism to deny Kemin a meaningful permanent injunction.  Kemin points out it was PIVEG's burden, pursuant to 35 U.S.C. § 295, to prove that its *actual* process for producing its purified lutein product does not infringe the '564 patent – a burden the jury determined PIVEG failed to carry with respect to the doctrine of equivalents.  Kemin asserts that therefore, the scope of the injunction

must be sufficient to include the actual process or processes employed by PIVEG during the relevant time period.  Indeed, Section 295 provides that when its requirements are satisfied, "[i]n actions alleging infringement of a process patent . . . the product shall be presumed to have been so made," 35 U.S.C. § 295, Kemin asserts that any meaningful injunction must account for this presumption.

Kemin next contends that PIVEG mischaracterizes and misapplies the <u>International Rectifier Corp.</u> decision.  As Kemin notes, the injunction in that case was criticized because it failed to explicitly exclude the defendant's redesigned products that were not adjudged to infringe the asserted patent.  <u>Int'l Rectifier Corp.</u>, 383 F.3d at 1315.  In the present case, however, PIVEG had the opportunity to present evidence on both of its alleged processes and thus both were adjudicated.  Moreover, PIVEG had the burden under Section 295 to prove that its process did not infringe the asserted claims.

Kemin asserts furthermore, that it is immaterial that the jury rendered a general verdict with respect to PIVEG's infringement of the '564 patent under the doctrine of equivalents.  Kemin contends it is well settled law that when a jury renders a general verdict in a party's favor, it is assumed that the jury resolved all underlying disputed issues with respect to the general verdict in that party's favor.  <u>Hicks v. Capitol American Life Ins. Co.</u>, 943 F.2d 891, 895 (8th Cir. 1991) (finding that where the verdict is general, the court "must presume that any and all issues were decided in favor if the prevailing party") (citations omitted); <u>Perkin-Elmer Corp. v. Computer-</u>

vision Corp., 732 F.2d 888, 893 (Fed. Cir. 1984) ("Absent such interrogatories, the law presumes the existence of findings necessary to support the verdict the jury reached."); Span-Deck, Inc. v. Fab-Con, Inc., 677 F.2d 1237, 1241 n.5 (8th Cir. 1982) ("A general verdict, without more, will of course give rise to the presumption that material fact issues have been resolved in favor of the prevailing party.").  As a result, Kemin maintains the Court must presume that the jury considered the evidence of the modified and original processes in reaching its verdict that PIVEG had not met its burden of proving noninfringement under the doctrine of equivalents.

Based primarily on this same argument, Kemin asserts the permanent injunction should apply to PIVEG's original and modified processes as the jury considered and adjudicated them both.  Kemin argues that the jury's response on the verdict form was unequivocal, i.e., they found PIVEG failed to prove that it had not infringed the asserted claims of the '564 patent under the doctrine of equivalents at any time after July 15, 1997.  Kemin also disputes PIVEG's assertion that it presented unrefuted evidence that it quit using propylene glycol in its process in November 2003.

Kemin further disregards PIVEG's argument that the amount of the jury award somehow indicates the jury did not find the modified process infringing.  Finally, Kemin asserts that PIVEG cannot be rewarded for its alleged modification undertaken mere months before the close of discovery and entered into evidence over Kemin's objection.  To the contrary, Kemin argues that because the jury's verdict did not

14

differentiate between PIVEG's original process and its allegedly modified process, the verdict was applicable to all processes that PIVEG used to produce purified lutein product for importation into the United States from July 1997 through September 2004, including the process allegedly used after November 2003.

The Court finds that an injunction is warranted in the present action based on the jury's finding of infringement under the doctrine of equivalents of the '564 patent. The jury's verdict coupled with the Section 295 presumption supports the conclusion that PIVEG was infringing the '564 patent, and all of the equitable injunctive considerations favor imposition of an injunction in the present case. PIVEG has not presented the Court with overriding evidence that it will suffer unwarranted harm or that an injunction will be inequitable, and its arguments that the general verdict received prohibits injunctive relief is not persuasive.[3]  Accordingly, the Court finds an injunction is warranted.

The next step for the Court is to fashion an appropriate injunction that complies with Rule 65(d), including those standards discussed in the <u>International Rectifier</u>

---

[3] From the early stages of this litigation, through discovery, the consideration of the burden shifting under Section 295, the trial, post-trial motion practice, and on the issue of a permanent injunction, the issues have been mired in a fundamental failure of proof with regard to the process actually used by PIVEG.  These circumstances, intentionally created by PIVEG based upon an explanation of protection against theft of their trade secrets, have failed as a shield against a finding of infringement, and must also fail as a sword against injunctive relief for Kemin.  Both the jury and this Court have been required to resolve the issues in this case with the added complication of this failure of proof.

Corp. case.  In this regard, the Court will enjoin a process employed by PIVEG to produce purified lutein products, which infringes claims 1 and/or 2 of the '564 patent, as further described by this Court's Claim Construction, using propylene glycol.  As the Court determined in its claim construction that propylene glycol is an essential element and cannot be substituted, the Court cannot enter an injunction encompassing any process lacking this element as such a process does not infringe the '564 process, even under the doctrine of equivalents.

In this manner, the Court will be specific in its injunction, and the scope thereof encompasses the jury's verdict as the Court finds the jury determined PIVEG's actual process, either originally or as modified, used propylene glycol in such a way as to infringe the '564 patent, as PIVEG was unable to prove otherwise.  Indeed, PIVEG did not irrefutably prove that it modified its process in any significant way, much less that said modified process did not use propylene glycol in any manner.  The Section 295 presumption and the jury verdict support this conclusion.

Accordingly, the Court grants Kemin's motion to enjoin and enters the following injunctive relief:

> The Court permanently enjoins PIVEG and any of its subsidiaries, officers, directors, agents (including attorneys) and employees of any of the foregoing, and those in active concert or participation with any of the foregoing from infringing claims 1 and/or 2 of the '564 patent, as set forth in the patent and as further defined by this Court's Order On Claim Construction of January 13, 2004, by making, using, offering to sell, or selling within the United States (including its territories or possessions), or by importing into the United States (including its territories or possessions) purified lutein products manufactured using the process

16

claimed by claims 1 and 2 of the '564 patent, as further defined by this
Court's Order on Claim Construction, during the unexpired term of the
'564 patent, without authorization or license, which includes the PIVEG
purified lutein products manufactured by the process or processes using
propylene glycol employed by PIVEG or its affiliates from July 15, 1997
to September 24, 2004, including, but not limited to: (a) PIVEG's 25%
lutein beadlet product; (b) PIVEG's 25% lutein CWD beadlet product;
(c) PIVEG's 5% lutein beadlet product; (d) PIVEG's 20% lutein oil
product; and (e) PIVEG's 70% lutein powder product.

**C.     Supplement Motion**

As noted above, Kemin filed its Supplement Motion over one week following

the hearing on the motion for permanent injunction, citing Rule 65 as the basis for its

request.  In this motion, Kemin seeks an order for the duration of the permanent

injunction that PIVEG must provide Kemin with representative samples of its purified

lutein products shipped to customers within the United States, such that Kemin will be

able to analyze those products for compliance with the injunction.  Specifically,

Kemin requests the Court order PIVEG to provide a list of all U. S. distributors and

permit Kemin to request and obtain a sample from each lot of purified lutein product

along with corresponding certificate of analysis for all purified lutein products that

PIVEG provides to a U. S. distributor.  Kemin further requests the Court require

PIVEG to submit a sample of each lot, with corresponding certificate of analysis, of

all purified lutein products shipped directly to customers within the United States (i.e.,

without an intermediate distributor).

Kemin argues that PIVEG's actions following trial, and specifically a letter from

PIVEG's counsel, demonstrate PIVEG's intent to continue manufacturing purified

17

lutein products that may potentially violate the Court's injunction.  Kemin asserts that since the end of trial, it has been virtually impossible for Kemin to obtain samples of PIVEG's purified lutein products.  Kemin contends such an order is the only way to provide Kemin with a meaningful way to monitor compliance with a permanent injunction.  Kemin further argues that Section 295 must be equally applicable to any injunction and contempt proceedings that arise from its operation in order to fully effectuate its purpose.  Kemin contends as a result that Section 295 is a factor that weighs in favor of imposing the additional conditions requested.

The Federal Circuit has explained that a court granting an injunction may "not properly deny the one element of such relief" that would be "necessary to make it effective." Trans-World Mfg. Corp. v. Al. Nyman & Sons, Inc., 750 F.2d 1552, 1564 (Fed. Cir. 1984).  In other words, the injunction should provide the aggrieved party with "meaningful relief," id., where the scope of injunctive relief is not limited to merely preventing "further acts of direct infringement." Kaspar Wire Works, Inc. v. K-Jack Eng's Co., 1995 WL 662674, at *3 (Fed. Cir. 1995); see also Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 777 (Fed. Cir. 1993) (stating injunctive relief not limited to acts of direct infringement).

The trial court is "in the best position to fashion in injunction tailored to prevent or remedy infringement," id. (citing Roche Prods. v. Bolar Pharm. Co., 793 F.2d 858, 865 (Fed. Cir. 1984)), and the Court is to be guided by the facts and circumstances of the individual case.  See Roche Prods., 793 F.2d at 865-66.  Upon a finding of patent

18

infringement, an injunction may enjoin those "acts which constitute direct, induced, or contributory infringement during the term of the patent." <u>Joy Techs., Inc.</u>, 6 F.3d at 777.  In addition, the trial court may determine whether "additional conditions are necessary," and accordingly "determine and . . . fashion an appropriate remedy." <u>Id.</u> The scope of the patent cannot, however, exceed that which is equitable or lawful. <u>See</u> <u>id.</u>; 35 U.S.C. § 283.

Kemin asserts that the circumstances of the present case require additional conditions be made part of the permanent injunction.  Kemin contends that absent the relief it has requested, PIVEG will continue to use a process that has been adjudged to infringe the '564 patent and Kemin will have no ability to monitor compliance with its injunction.  Moreover, Kemin asserts that under Section 295 "the product shall be presumed to have been so made" in infringement actions when the Section's requirements are met, <u>see</u> 35 U.S.C. § 295, and any meaningful injunction, and the corresponding contempt proceedings, must account for this presumption.

PIVEG, on the other hand, insists the additional conditions requested by Kemin exceed the bounds of equity and law.  PIVEG asserts that the letter from its counsel implies no future infringement as it provides that the process used by PIVEG no longer uses propylene glycol at any stage.  PIVEG further avers that PIVEG samples have been available to and tested by Kemin.  PIVEG argues that the additional conditions requested are an attempt by Kemin to prevent PIVEG from operating in the U. S. market.  In addition, PIVEG accuses Kemin of using its unfounded concerns to

support a thinly veiled attempt to obtain competitive data to which it is not entitled.

Finally, PIVEG rejects Kemin's assertion that Section 295 requires imposition of the

requested conditions arguing that imposition of the Section 295 presumption applies

only to the allegations of infringement raised at trial.

      The Court is not persuaded the relief requested by Kemin, i.e., requiring

PIVEG to provide samples and distributor lists on an ongoing basis, is a necessary

condition for enforcement of the permanent injunction to be entered by the Court.

The letter Kemin cites essentially does nothing more than claim PIVEG is now using a

non-infringing process, i.e., a process that does not use propylene glycol at any stage,

and, as discussed above and agreed upon by the parties, the Court cannot (and does

not) enter an injunction covering any process lacking the use of propylene glycol.  In

addition, Kemin has been able to obtain samples in the past, and despite the affidavit

provided by Kemin, the Court is not convinced it will be unable to do so in the future.

      The Court further finds unpersuasive Kemin's contentions that the Section 295

presumption should carry over and requires imposition of these additional conditions.

Ultimately, Section 295 has served its purpose in shifting the burden at trial and

whether the benefits of this Section are available to Kemin in the contempt context is

a question for another day, if ever.

      A court-ordered sampling procedure would be more burdensome on PIVEG

than is warranted by the circumstances and is therefore not warranted at the present

time.  Indeed, an injunction should not be "a sword for wounding a former infringer

who has made a good-faith effort to modify a previously adjudged or admitted infringing device to remain in the marketplace."[4]  Arbek Mfg., Inc. v. Moazzam, 55 F.3d 1567, 1570 (Fed. Cir. 1995) (citing KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522, 1525-26 (Fed. Cir. 1985)).  Accordingly, the Court must deny Plaintiffs' Supplement Motion at the present time.

**D.   Motion for Fees**

In its motion for fees and costs, PIVEG seeks an award of attorneys' fees against Kemin.  In exceptional cases, the Court may award reasonable attorneys' fees to the prevailing party.  35 U.S.C. § 285.  This Section involves a two-step process that requires the Court to determine (1) whether the prevailing party has proven by clear and convincing evidence the case is "exceptional," and (2) whether an award of attorneys' fees is appropriate.  Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1370 (Fed. Cir. 2004); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998).  Absent a finding of exceptionality, the Court cannot award attorneys' fees under Section 285.  Ruiz v. A.B. Chance Co., 234 F.3d 654, 670 (Fed. Cir. 2000) ("Only if a court finds that a prevailing party satisfies its burden of proving an exceptional case does it determine whether to award attorney fees.") (citations omitted).

The Court must consider the totality of the circumstances in determining whether a particular case is "exceptional."  See generally Kaufman Co. v. Lantech,

---

[4] While this record does not provide the basis upon which to conclude with any certainty that PIVEG has made such a "good faith effort" nor does the record support a contrary conclusion.

Inc., 807 F.2d 970, 978-79 (Fed. Cir. 1986).  The Federal Circuit has found "[s]uch 'exceptional' cases involve inequitable conduct before the PTO, litigation misconduct, vexatious and otherwise bad faith litigation, frivolous suit or willful infringement." Stephens v. Tech Int'l, Inc., 393 F.3d 1269, 1273 (Fed. Cir. 2004) (citing Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed. Cir. 2003)).  Thus, relevant to the present motion, exceptional circumstances include bad faith litigation and inequitable conduct.  Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996).  The district court has broad discretion in determining whether a case is exceptional and whether attorneys' fees are warranted.  Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1382 (Fed. Cir. 2005); see also Impax Labs., Inc. v. Aventis Pharms., Inc., 333 F. Supp. 2d 265, 284 (D. Del. 2004).

PIVEG requests attorneys' fees in the present case by claiming the case is exceptional as Kemin "clearly" pursued its claims against PIVEG relative to the '714 patent in bad faith.  PIVEG bases this assertion on the fact that the jury returned advisory findings that the *Poultry Science* article was material and Kemin had an intent to withhold the article from the PTO.  See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 182 F.3d 1356, 1359 (Fed. Cir. 1999) ("[I]nequitable conduct is a substantive patent issue that must be taken into consideration in determinations made under 35 U.S.C. § 285.").  Further, the jury concluded PIVEG did not infringe the '714 patent.  PIVEG thus argues that the present case is exceptional as Kemin's actions in pursuing its infringement claim against PIVEG as to the '714 patent were in

bad faith because of Kemin's withholding of material prior art.  See Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d 805, 811 (Fed. Cir. 1990).

Kemin asserts the present case is not exceptional because PIVEG's allegations of inequitable conduct are contrary to this Court's finding that the patents are enforceable.  See Ruiz, 234 F.3d at 670 (affirming refusal to award attorneys' fees where the court did not find inequitable conduct); Akron Polymer Container Corp. v. Exxel Container, Inc., 148 F.3d 1380, 1384 (Fed. Cir. 1998) (finding no basis to establish inequitable conduct and concluding that "without a basis to support the judgment of unenforceability, there is no foundation on which to conclude that this is an exceptional case under section 285").[5]  Indeed, this Court did hold as a matter of law that the '714 patent is enforceable.  See Order, at 24.  Kemin further argues that PIVEG cannot rely on the jury advisory findings on materiality and intent, see Order, at 6 (finding advisory verdicts are merely advisory and are not binding) (citing Gragg v. City of Omaha, 20 F.3d 357, 358-59 (8th Cir. 1994)), to contend that inequitable conduct occurred and warrants a finding of exceptionality, especially in light of the

---

[5] In fact, some courts have refused to award attorneys' fees even where the court has found the patentee committed inequitable conduct.  See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd., 292 F.3d 1363, 1376, 1378 (Fed. Cir. 2002) (affirming district court's decision finding of inequitable conduct and its decision not to award attorneys' fees).  Thus, not even every case of adjudicated inequitable conduct automatically mandates a finding of exceptionality and an award of attorneys' fees.  Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1215 (Fed. Cir. 1987); see also S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986) (recognizing that "[e]ven an exceptional case does not require in all circumstances the award of attorney fees").

Court's subsequent determinations on the issue of inequitable conduct.  See id. at 23-24.

Kemin next contends that the case is not exceptional because PIVEG cannot establish that the lawsuit was filed in bad faith.  Kemin contends that PIVEG fails to assert any evidence that Kemin brought this lawsuit in bad faith beyond conclusory allegations which are insufficient to satisfy PIVEG's burden on this issue.  See Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1359 n.5 (Fed. Cir. 1999) (noting that conclusory assertion of equivalence fails to carry the burden to establish genuine issue of material fact).  Kemin further asserts its claims were neither frivolous nor brought in bad faith, see Stephens, 393 F.3d at 1273-74 (providing that "'[a] frivolous infringement suit is one in which the patentee knew or, on reasonable investigation, should have known was baseless'") (quoting Haynes Int'l Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1993)), and cites as evidence the fact that: (1) a patentee's suit based on a valid patent is presumed to be in good faith, see Brooks, 393 F.3d at 1382 ("There is a presumption that the assertion of infringement of a duly granted patent is made in good faith.") (citations omitted); (2) Kemin's patents survived a summary judgment motion for noninfringement, see Sulzer, 358 F.3d at 1370 (finding suit was not frivolous in part because plaintiff's claim successfully withstood summary judgment motion); and (3) this Court upheld the '714 patent as valid and enforceable,

see FilmTec Corp. v. Hydranautics, 67 F.3d 931, 937-38 (Fed. Cir. 1995) (noting it would be difficult to show that litigation is a sham where the patentee prevailed).[6]

This Court previously found the case was not exceptional in response to Kemin's motion for fees under § 285 as there was no willful infringement and Section 295 adequately dealt with PIVEG's inability to provide evidence of its actual process. See Order, at 46.  Likewise, the Court finds PIVEG has not shown by clear and convincing evidence that this case is exceptional as the Court expressly concluded that a finding of inequitable conduct is not warranted, and there is no indication of bad faith on the part of Kemin in bringing this lawsuit.  Accordingly, the Court must deny PIVEG's motion for attorneys' fees under Section 285.

PIVEG also seeks costs as part of its motion.  Federal Rule of Civil Procedure 54 allows a prevailing party to recover costs other than attorneys' fees.  Fed. R. Civ. P. 54(d)(1).  PIVEG has submitted Form A.O. 133 as required by the Local Rules as part of its motion for costs and fees.  See Local Rule 54.1(a)(1).  However, as noted by Kemin, a motion for costs is not ripe until final judgment has been entered.  As final judgment has not yet been entered, and Kemin has indicated (both in its brief and at oral argument) that it intends to also submit a motion for costs, the Court reserves judgment on the issue of costs until such time as the issue has been fully submitted and becomes ripe for this Court's review.

---

[6] Kemin also contends fees are unavailable to PIVEG as PIVEG was not the prevailing party.  The Court does not now comment on this contention as the motion fails on other grounds.

## CONCLUSION

For the reasons discussed above, the Court hereby **denies** Kemin's Motion for Clarification (Clerk's No. 327), and also **denies in part** PIVEG's Motion for Fees and Costs (Clerk's No. 328) as to the issue of fees.  The Court reserves judgment on the issue of costs raised in that motion until final judgment has been entered and both parties have fully submitted the issue.  In addition, for the reasons discussed herein, the Court hereby **grants** Kemin's motion to enjoin (Clerk's No. 316) and **orders** a permanent injunction be entered as follows:

> The Court permanently enjoins PIVEG and any of its subsidiaries, officers, directors, agents (including attorneys) and employees of any of the foregoing, and those in active concert or participation with any of the foregoing from infringing claims 1 and/or 2 of the '564 patent, as set forth in the patent and as further defined by this Court's Order On Claim Construction of January 13, 2004, by making, using, offering to sell, or selling within the United States (including its territories or possessions), or by importing into the  United States (including its territories or possessions) purified lutein products manufactured using the process claimed by claims 1 and 2 of the '564 patent, as further defined by this Court's Order on Claim Construction, during the unexpired term of the '564 patent, without authorization or license, which includes the PIVEG purified lutein products manufactured by the process or processes using propylene glycol employed by PIVEG or its affiliates from July 15, 1997, to September 24, 2004, including, but not limited to: (a) PIVEG's 25% lutein beadlet product; (b) PIVEG's 25% lutein CWD beadlet product; (c) PIVEG's 5% lutein beadlet product; (d) PIVEG's 20% lutein oil product; and (e) PIVEG's 70% lutein powder product.

However, the Court **denies** Kemin's Supplement Motion (Clerk's No. 339) and declines to require on an ongoing basis that PIVEG provide samples of its purified lutein products (or distributor lists) shipped to the United States.

Finally, pursuant to Rule 54(b) the Court orders that final judgment be entered on all issues adjudicated in the bifurcated proceeding including those in pre-trial motions, at trial, and in subsequent post-trial motions.  This encompasses the determinations and findings of the Court and the jury, including the claim construction of the '714 and '564 patents, the determination of the applicability of Section 295, infringement or noninfringement of the patents-in-issue both literally and under the doctrine of equivalents, the invalidity and enforceability issues of the patents-in-issue, and the permanent injunction issued today.  The Court finds there is no just reason for delay and directs final judgment be entered on these issues pursuant to Rule 54(b).

**IT IS SO ORDERED.**

Dated this 9th day of May, 2005.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT