IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KEMIN FOODS, L.C., THE CATHOLIC UNIVERSITY OF AMERICA,<br><br>        Plaintiffs,<br><br>vs.<br><br>PIGMENTOS VEGETALES DEL CENTRO S.A. DE C.V.,<br><br>        Defendant. | **No. 4:02-cv-40327**<br><br>**ORDER ON DEFENDANT'S MOTION TO STAY, DEFENDANT'S MOTION FOR LEAVE TO AMEND COUNTERCLAIMS, PLAINTIFFS' MOTION TO DISMISS, AND PLAINTIFFS' RULE 11 MOTION TO DISMISS** |

Currently pending before the Court are Defendant's Motion to Stay Counterclaims (Clerk's No. 361) and Motion for Leave to Amend and Supplement Counterclaims (Clerk's No. 360), and Plaintiffs' Motion to Dismiss (Clerk's No. 344) and Motion Under Rule 11 to Dismiss (Clerk's No. 350).  Attorneys for Plaintiffs are Susan K. Knoll, Scott W. Clark, Michelle Replogle, and Ed Mansfield; attorneys for Defendant are G. Brian Pingel, Michael A. Dee, and Camille L. Urban Brown.  The pending motions are fully submitted following oral argument on August 3, 2005.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

Plaintiffs, Kemin Foods, L.C. and The Catholic University of America (hereinafter "Kemin") filed a Complaint alleging infringement of two patents (the '564 and

---

[1] The Court is well aware of the facts of this case, and further recitation of those facts is unnecessary in this memo except to the extent relevant to the currently pending motions.  All such relevant background facts are included in the analysis section of this order.

'714 patents) on July 9, 2002.  Defendant, Pigmentos Vegetales del Centro S.A. de

C.V. ("PIVEG") filed its Answer on September 20, 2002, responding to Plaintiffs'

allegations and asserting certain counterclaims of unfair competition and other antitrust

violations.  On May 9, 2003, this Court entered an Order bifurcating the patent

infringement from the antitrust/unfair competition counterclaims.  A jury rendered a

verdict on the patent issues on September 24, 2004, following a ten-day trial.  The

jury found the '714 patent valid but not infringed and the '564 patent valid and

infringed under the doctrine of equivalents.  Thereafter, this Court held as a matter of

law that both the '714 and '564 patents were valid and enforceable and otherwise

upheld the jury determinations in its Order on Post-Trial Motions filed February 8,

2005.  The Court subsequently certified its decisions as final in its May 9, 2005

Order, in which the Court also issued a permanent injunction in accordance with the

Court's claim construction and the jury determination of infringement of the '564

patent.  PIVEG filed its Notice of Appeal on June 7, 2005, while Kemin filed its

Notice of Cross Appeal on June 20, 2005.  The Federal Circuit officially docketed the

appeal and cross-appeal on July 20, 2005, and that appeal on the already decided

patent issues is currently pending before that court.

## ANALYSIS

Consistent with the history of this action, there has been a flurry of filings since

the Court's May 9, 2005, Order, all of which deal with the counterclaims previously

bifurcated by this Court.  The counterclaims brought by PIVEG allege antitrust and

unfair competition violations by Kemin in its obtaining and protecting its purified lutein

2

patents and in its marketing of those products.  In this latest round between the parties, PIVEG has first moved to stay any further action with relation to the unfair competition/antitrust counterclaims.  In addition, as a result of the outcomes of the jury trial and this Court's post-trial orders, PIVEG has moved for leave to amend and supplement its counterclaims.  On the other side, Kemin has resisted both of PIVEG's motions.  Additionally, Kemin moves for dismissal of nearly all of PIVEG's original counterclaims, initially in a motion to dismiss applicable to a majority of the counter-claims, and subsequently in a motion pursuant to Fed. R. Civ. P. 11 to dismiss the counterclaim based upon an alleged noncompete agreement.  PIVEG, of course, resists these motions.  These motions will be discussed and analyzed *in seriatim.*

**A.    Defendant's Motion to Stay**[2]

PIVEG moves for a stay of its counterclaims pending resolution of the appeal docketed by the Federal Circuit regarding the patent issues previously decided by a jury verdict and this Court.  PIVEG asserts such a stay is desirable based on the potential outcome of its appeal before the Federal Circuit.  Kemin resists a stay and urges the Court to consider its pending motions to dismiss that go to the merits of PIVEG's counterclaims.

---

[2] The Court examines the Motion for Stay on its own merits, without regard to the impact of other pending motions.

3

### 1.    The Factors Analyzed in Determining Whether to Issue Stay

When determining "whether to stay a matter pending appeal, an essentially procedural question, the law of our regional circuit rather than that of the Federal Circuit Court of Appeals is applicable."  <u>Pioneer Hi-Bred Int'l, Inc. v. J.E.M. Ag Supply, Inc.</u>, 33 F. Supp. 2d 794, 796 (N.D. Iowa 1999) (citing <u>Dethmers Mfg. Co. v. Automatic Equip. Co.</u>, 23 F. Supp. 2d 974, 988 (N.D. Iowa 1998)).  The Eighth Circuit factors considered by this Court when determining the appropriateness of a stay pending appeal are as follows:  (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants a stay; and (4) the public interest in granting the stay.  <u>Id.</u> at 797.

### a.    Likelihood of Success on Appeal

The first factor in determining the appropriateness of a stay pending appeal concerns the likelihood of success by the movant on appeal.  <u>Id.</u>  This does not require the movant to establish an absolute certainty of success; rather, the movant only needs a "strong argument" in its favor.  <u>Iowa Utils. Bd. v. FCC</u>, 109 F.3d 418, 423 (8th Cir. 1996).

PIVEG contends it is likely to succeed in its appeal before the Federal Circuit on the issue of the enforceability of the '714 patent, a key issue in PIVEG's unfair competition counterclaims.  Specifically, PIVEG points out the jury provided advisory determinations that Kemin withheld a material prior art reference with the intent to withhold the specified material from the PTO.  While this Court ultimately concluded

the level of materiality and intent did not rise to the level necessary to render the '714 patent unenforceable, PIVEG asserts the Federal Circuit will find otherwise.

In support of its position, PIVEG argues this Court made an error of law by discussing enablement in finding the patent enforceable despite the jury's findings, and that the Federal Circuit, which previously stated in this case that "the materiality of the article is not negated by the fact that the method disclosed therein may have required some modification in order to be operative," will find otherwise. PIVEG's appeal asks the appellate court to review the determination of the level of materiality and then reapply the sliding scale determination of inequitable conduct. See GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1273 (Fed. Cir. 2001) (quoting Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1439 (Fed. Cir. 1991)). PIVEG is convinced the Federal Circuit will agree with its position and consequently that PIVEG has thus demonstrated a good likelihood of prevailing on the merits of its appeal.

Kemin counters that PIVEG lacks support for its proposition that this Court erred in ruling on the enforceability of the '714 patent. To the contrary, Kemin points out the Federal Circuit has upheld a District Court determination that a reference not sufficiently enabled supported the court's determinations on materiality such that no finding of inequitable conduct was warranted. See FMC Corp. v. Manitowec Co., Inc., 654 F. Supp. 915, 935 (N.D. Ill. 1987), aff'd, 835 F.2d 1411 (Fed. Cir. 1987). Kemin contends that this Court correctly assessed the materiality and intent elements in finding no inequitable conduct sufficient to render the '714 patent unenforceable.

In addition, Kemin contends that PIVEG ignores the high standard necessary to reverse this Court's factual findings, i.e., the clearly erroneous standard,[3] see Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1584 (Fed. Cir. 1995), which is "significantly deferential" to the district court's findings. Concreto Pipe & Prods., Inc. v. Const. Laborers Pension Trust, 508 U.S. 602, 623 (1993).[4]  In fact, to satisfy this burden on appeal, PIVEG must "show 'serious questions going to the merits.'" Knutson v. AG Processing, Inc., 302 F. Supp. 2d 1023, 1035 (N.D. Iowa 2004) (citations omitted).  A reiteration of objections and arguments already considered by the district court is usually insufficient to meet this burden.  Id. at 1023.

---

[3] "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see also Sawheny v. Pioneer, 93 F.3d 1401, 1407-08 (8th Cir. 1996).  Accordingly, if the district court's account of the evidence is plausible in light of the record as a whole, the appellate court may not reverse even though it may be convinced it would have weighed the evidence differently and arrived at a different result had it been sitting as the trier of fact.  Amadeo v. Zant, 486 U.S. 214, 223-28 (1988).  Indeed, a choice between two permissible views of the evidence cannot be clearly erroneous.  Cook v. Nebraska Pb. Power Dist., 171F.3d 626, 630 (8th Cir. 1999).

[4] According to the Seventh Circuit, to reach a conclusion that the district court's finding is clearly erroneous, the decision must strike the appellate court "as wrong with the force of a five-week-old-unrefrigerated dead fish."  Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988).  Or stated less illustratively (and even less aromatically), this "burden is a heavy one and most movants will be unable to meet this standard."  Knutson v. AG Processing, Inc., 302 F. Supp. 2d 1023, 1035 (N.D. Iowa 2004).

Kemin asserts that like the defendant in <u>Knutson</u>, PIVEG has done nothing more than restate its previously heard and decided arguments and has provided no case law to support its assertion that it is likely to succeed on the merits of its appeal. Furthermore, even a different finding on the issue of materiality may not be sufficient for PIVEG to succeed as the Federal Circuit would still be required to review this Court's "ultimate determination of whether inequitable conduct occurred for abuse of discretion," <u>Duro-Last, Inc. v. Custom Seal, Inc.</u>, 321 F.3d 1098, 1110 (Fed. Cir. 2003) (citations omitted), and Kemin asserts PIVEG is fighting an uphill battle in its attempts to reverse this Court's conclusions as to the inequitable conduct of Kemin in procuring the '714 patent.

Contrary to PIVEG's assertions, this Court did not conclude the <u>Poultry Science</u> article was not material because it was not enabled.  The Court accepted the jury's advisory finding that the article was material but then assessed a low level of weight to the materiality element *in part* because the article was not enabled as written.  Moreover, the Court did not accept PIVEG's assertions that the method disclosed in the article was enabled with only slight modifications as such evidence was unsupportable by anything other than the testimony of one PIVEG employee who was unable to later testify as to what modifications he employed and who kept no notes or log of his work with the article.  Consequently, this Court recognized that "the information need not necessarily be enabled" to be material, but "the ability to duplicate the information disclosed is relevant to the level of materiality attached to the information," because "to find otherwise would allow even dubious claims of

7

inconceivable results to cloud valid research and resulting patents."  Order on Post-

Trial Motions at 23.  PIVEG also elects not to pursue this Court's determination and

assignment of a "very low weight to the level of intent engendered by Kemin, and Dr.

Nelson in particular" because "the Court has not been convinced the failure to provide

the <u>Poultry Science</u> article was the result of a deceitful motive."  <u>Id.</u> at 24.  It was

these determinations that led to this Court's ultimate conclusion "that a finding of

inequitable conduct is not warranted" because "Kemin did not exhibit the culpable

intent required to effectively render the '714 patent unenforceable."  <u>Id.</u>  This

difference in characterization of the Court's prior ruling is not helpful in persuading

the Court of a likelihood of success on appeal.

The Court thus finds nothing in PIVEG's arguments in its motion to stay

convincing that the Court's findings were in error and that the Federal Circuit will so

conclude.  As a result, the Court assigns little weight to this factor as favoring a stay

pending the current appeal.

### b.    Threat of Irreparable Harm Absent Stay

The second factor in determining the appropriateness of a stay pending appeal

concerns the threat of irreparable harm to the movant should the stay be denied.

<u>Pioneer Hi-Bred Int'l, Inc.</u>, 33 F. Supp. 2d at 797.  This factor requires the harm to

be certain and great and of such imminence that there is a clear and present need for

equitable relief in order to qualify as "irreparable".  <u>Iowa Utils. Bd.</u>, 109 F.3d at 425;

<u>see also</u> <u>Packard Elevator v. I.C.C.</u>, 782 F.2d 112, 115 (8th Cir. 1986).  The potential

loss of consumer goodwill may qualify as irreparable harm.  <u>Id.</u> (citing <u>Multi-Channel</u>

TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th

Cir. 1994) (finding the possibility of permanent loss of customers to a competitor or

the loss of goodwill satisfies the irreparable injury prong)).  The threat of unrecover-

able economic loss may also qualify as irreparable harm.  Baker Elec. Coop., Inc. v.

Chaske, 28 F.3d 1466, 1473 (8th Cir. 1994); Airlines Reporting Corp. v. Barry, 825

F.2d 1220, 1227 (8th Cir. 1997).

PIVEG contends it will suffer irreparable harm if a stay is not granted.  PIVEG

points out that it is a small company with limited resources, and as a newcomer to the

purified free lutein market it is required to spend significant amounts of time and

money to establish itself in this market, build goodwill, and obtain a strong customer

base.  PIVEG contends that its present investment in the market is "absolutely critical

to its survival," and if the requested stay is not granted, PIVEG will be unable to

sustain its level of investment.  PIVEG contends that the failure to grant a stay may

result in the relitigation of its counterclaims after the Federal Circuit rules, and that the

output required to fund its legal needs will prevent PIVEG from being able to ade-

quately compete in the market until final resolution of the case.  PIVEG argues this

delay is likely to result in lost opportunity to gain market share and a potential loss of

its current customer base.  PIVEG contends that this threat of potential loss of con-

sumer goodwill and the threat of unrecoverable economic loss is sufficient to meet this

second prong weighing in favor of granting the stay.

Kemin asserts that PIVEG has failed to provide any evidence of the irreparable

harm it asserts it will suffer absent a stay of the counterclaims.  Specifically, Kemin

argues that "legal expenses" are not a recognized basis for irreparable harm, but that PIVEG's speculative and hypothetical allegations are insufficient to demonstrate the harm is certain and great such that there is a clear and present need for the stay. Moreover, Kemin points out that "economic loss standing alone does not constitute irreparable harm;" rather, PIVEG must show a "threat of unrecoverable economic loss" that is "both certain and great . . . [and] actual and not theoretical." Knutson, 302 F. Supp. 2d at 1037 (citations omitted).  Further, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985).

Kemin contends that PIVEG's allegations are speculative and unsupportable, especially if PIVEG's assumptions regarding its appeal prove untrue.  Also, if PIVEG fails in its bid to amend its claim and this Court dismisses the counterclaims as requested by Kemin's currently pending motions to dismiss, PIVEG could consolidate an appeal on its counterclaims with its current appeal before the Federal Circuit (thereby saving PIVEG both time and money).  Kemin also asserts that PIVEG downplays its size and ability to weather the coming rounds of litigation as in a May 12, 2005, press release PIVEG boasts it is a "global supplier of carotenoids" with "highly specialized carotenoids production and development capabilities" and thousands of acres of marigolds processed in plants located in Mexico (five plants) or Peru (2 plants).  Kemin also argues that PIVEG's argument fails as it is PIVEG's position that it can continue to operate its lutein business without fear of infringing the

10

'714 or '564 patents.  Finally, Kemin asserts that PIVEG's efforts to stay the resolu-

tion of the counterclaims is contrary to the purpose of bifurcation, i.e., the conserva-

tion of judicial resources and simplification of the issues.

The Court accepts PIVEG likely will suffer some harm to its business as a

result of the ongoing litigation in this case.  However, the case has already endured

over three years of litigation, multiple hearings and motions before the Court, one jury

trial, and is on its second appeal to the Federal Circuit.  The Court finds PIVEG is

unable to adequately demonstrate the clear, great, and imminent harm giving rise to a

clear and present need for the stay.  As one court stated,

> [b]are allegations of what is likely to occur are of no value since the
> court must decide whether the harm will *in fact* occur.  The movant
> must provide proof that the harm has occurred in the past and is likely to
> occur again, or proof indicating that the harm is certain to occur in the
> near future.  Further, the movant must show that the alleged harm will
> directly result from the action which the movant seeks to enjoin.

Wisconsin Gas Co., 758 F.2d at 674.  PIVEG's assertions seem to be based on

speculation and supposition.  Moreover, and most importantly, PIVEG admitted at

oral argument that any harm it may potentially suffer, i.e., the loss of goodwill, lost

access to customers and the market, will be a result of the litigation expenses incurred.

Such legal expenses are not sufficient for purposes of this prong, and the Court there-

fore finds this prong does not strongly support the grant of a stay.

### c.   Harm to Others if Stay Granted

As to the third prong, PIVEG merely contends that others will benefit rather than be harmed by a stay in this case.  Specifically, PIVEG points out that a stay removes the possibility that this Court will have to relitigate the same issues twice if the Federal Circuit's decision on the patent issues impacts this Court's decisions related to the antitrust/unfair competition counterclaims.  In addition, PIVEG contends that a stay would remove uncertainty that is currently affecting the lutein marketplace.

Kemin points out that PIVEG's assertions on this prong are hinged on the idea that the outcome of its appeal will result in another trial of the counterclaims.  Again, this assumes that the counterclaims will proceed to the trial stage before the appeal is resolved and that PIVEG will be successful on its appeal.  In addition, Kemin asserts that, contrary to PIVEG's assertion, a stay will result in a longer period of uncertainty as it will only serve to delay their resolution.

Kemin further counters PIVEG's arguments on this prong by stating that a stay of the counterclaims will in fact be harmful to Kemin.  Dr. Ausich, the current president of Kemin Foods, L.C., states the ongoing allegations of antitrust activity are causing harm to Kemin Foods' business reputation in the marketplace, and that one of Kemin's largest customers is very sensitive to any allegations of antitrust activities on the part of its suppliers and continues to press Kemin for information regarding resolution of the suit and the antitrust claims.

Kemin provides greater support for the proposition that a stay will harm Kemin than PIVEG does for its argument that a stay will benefit others.  Like fraud, antitrust

12

and unfair competition claims against a company are serious allegations that can affect how that company is viewed in the marketplace regardless of whether the allegations are ultimately proven.  It is reasonable that Kemin seeks to clear up these allegations as soon as possible.  Again, PIVEG has not adequately demonstrated that no harm to others will inure as a result of the present stay.

### d.   Public Interest

PIVEG reasserts the preservation of judicial resources in support of the fourth prong regarding the public interest in issuing a stay.  PIVEG again contends there is a likelihood of its success on appeal with the result that this Court will then be required to relitigate any dispositive or determinative decisions rendered on PIVEG's antitrust/ unfair competition counterclaims that are affected by the appellate decision.  PIVEG argues that the conservation of trial and jury resources, as well as court resources, that would be gained through a stay is in the public interest.  Moreover, PIVEG contends that a stay will prevent irreparable harm to PIVEG and allow it to be a viable competitor in the lutein marketplace, thereby contributing to a less monopolistic market for the purified free lutein industry.

Kemin reasserts its contention that a stay at this stage of the proceedings is contrary to the purpose of bifurcation.  Kemin contends it would be more efficient to decide Kemin's fully-briefed dispositive motions to dismiss now by applying the law of the case.  Any dismissal of the counterclaims can then be appealed and consolidated with the currently pending appeal already before the Circuit, which if affirmed effectively terminates the case.  A stay only guarantees future district court

13

proceedings at a later date.  Kemin also contends that a stay effectively delays it from receiving the benefits of an already concluded trial, which is contrary to the public policy goals and expectations of the judicial system.  As the Court entered a Rule 54(b) judgment on the patent issues in its May 9, 2005, Order, these determinations have become the law of the case and *res judicata*.  Kemin contends that any delay now would effectively disregard the final judgment on issues that will dispense most of PIVEG's counterclaims.

Kemin offers persuasive arguments that a stay will essentially diminish the import of the jury decision and this Court's determinations on post-trial motions.  However, there does exist the potential that the Federal Circuit could reverse this Court's determinations on the issue of enforceability.  If this occurs, and the Court has continued with the counterclaim proceedings, the Court may be required to relitigate some of the issues already decided.  This possibility, however, is over-whelmed by the Court's determinations on the other factors.  Moreover, PIVEG has in no way demonstrated how a stay would result in a less monopolistic marketplace for purified free lutein.

## 2.    Other Factors in Determining Appropriateness of Stay

PIVEG also cites to several decisions for the proposition that a stay is appro-priate pending resolution of patent issues that may aid in subsequent district court proceedings.  See Medichem S.A. v. Rolabo, S.L., 353 F.3d 928, 935 (Fed Cir. 2003); Slip Track Sys. v. Metal Lite, 159 F.3d 1337, 1341 (Fed. Cir. 1998); Fisher Controls Co. v. Control Components, Inc., 443 F. Supp. 581, 582 (S.D. Iowa 1977).

PIVEG contends that resolution of the patent issues currently on appeal to the Federal Circuit will directly impact this Court's upcoming proceedings on the counterclaims. Consequently, resolution of the pending appeal could result in an abbreviation of the counterclaims and requisite proof.  Additionally, PIVEG contends that the same reasoning used by the Court in initially bifurcating the counterclaims from the patent issues supports the grant of a stay at this stage of the litigation.

Kemin contends that none of PIVEG's cited cases are similar to the present action in that none of them deal with the stay of counterclaims pending an appeal to the Federal Circuit; rather, these cases all concern the stay of patent cases pending the outcome of a proceeding before the Patent Office.  Consequently, Kemin argues PIVEG fails to cite any precedent for the relief it is seeking.

This Court is well aware of the situation requiring a stay pending current proceedings before the PTO, see Middleton, Inc. v. Minnesota Mining & Mfg., Co., 2004 WL 1968669 (S.D. Iowa Aug. 24, 2004) (staying proceedings pending outcome of reexamination of the patent-in-suit by the PTO where such proceedings will have an impact on the current issues before the Court and relitigation of matters already tried would be highly likely), and the current case does differ somewhat from those cases.  That said, however, like in those cases there exists here the potential that this Court will have to retry and rehear many of the issues related to the counterclaims depending on the outcome of the appeal before the Federal Circuit.

This possibility, while PIVEG's best argument in support of granting the stay requested, does not on its own persuade the Court that a stay is prudent in the present

15

action.  As noted above, PIVEG's arguments that it will be successful on appeal are tenuous.  Accordingly, the probability that these issues will need to be retried at a later date does not seem high.

The Court anticipated the bifurcation of issues in the case would result in a determination of issues underlying the counterclaim allegations.  Such a determination has been obtained, but in a manner that is adverse to PIVEG.  Thus, PIVEG wants to deny Kemin the benefit of those determinations while PIVEG seeks to change the result on appeal.  The Court does not find this strategy supportable in terms of the applicable law or the arguments for judicial economy.  Consequently, the Court finds the factors analyzed by the Court to determine whether a stay pending appeal is appropriate in the present case do not favor granting the requested stay.  Therefore, the Court must deny PIVEG's motion for a stay.

**B.**   **Defendant's Motion to Amend and Supplement Counterclaims**

PIVEG has also submitted a motion for leave to amend and supplement its counterclaims.  Rule 15(a) grants discretion to the Court to grant or deny a motion by a party to amend that party's pleading when the parties can no longer amend as a matter of course.  See Fed. R. Civ. P. 15(a) ("Otherwise, a party may only amend the party's pleading by leave of court or by written consent of the adverse party").  Such discretion is tempered by the Rule, which states that "leave shall be freely given when justice so requires."  Id.

PIVEG seeks to amend and supplement its counterclaims as follows:

16

a.   The noncompete agreement referenced in the original counterclaims is amended to incorporate a nondisclosure agreement, rather than a noncompete agreement, and provide allegations as to its role in anticompetitive efforts by Kemin.

b.   PIVEG provides additional and supplemental allegations supporting its claims of unfair competition and antitrust violations based on Kemin's alleged exclusionary practices.  These allegations include the claims that Kemin knowingly false marked products with a patent number, implemented a campaign to inform others that competing products (such as PIVEG's) would infringe its patent, and that purchasers of said competing products would contributorily infringe.  PIVEG contends Kemin engaged in this conduct knowing that products nearly identical to its own would not infringe the patent.

c.   PIVEG provides additional allegations supporting its claims of unfair competition and antitrust violations based on the unenforceability of the '714 patent and Kemin's exclusionary practices of procuring the patent by fraud and then knowingly enforcing the fraudulently procured patent in an effort to gain monopoly power.

d.   Kemin's actions since this Court construed the '564 patent claims are described as a basis for PIVEG's supplemental unfair competition and antitrust claims alleging that Kemin informed both its and PIVEG's customers that purchasing PIVEG's products would put the purchaser at risk of infringing the '564 patent, even though PIVEG had provided a sample to Kemin wherein no propylene glycol residue was present.  PIVEG argues evidence to support this amendment came to light during discovery of the bifurcated, infringement-related claims.

e.   PIVEG supplements its antitrust violations (claim V) to include an allegation of sham litigation based on the information known to Kemin at the time of filing.  Specifically, based on documents obtained through discovery, it is alleged Kemin knew that PIVEG's products did not exhibit at least two of the elements necessary to establish infringement of the '714 patent, yet Kemin brought suit

17

and continued a campaign to inform PIVEG's customers and potential customers about regarding [sic] the ongoing lawsuit in an effort to interfere with PIVEG's business relationships.

f.   PIVEG supplements its antitrust violations (claim VI) to include an allegation of patent misuse based on intentional false marking in order to broaden the physical scope of Kemin's patent protection, having anticompetitive effects in the market and implementing a campaign to inform others that competing products wold infringe and purchasers of said competing products would contributorily infringe.  This cause includes allegations that after this Court construed the '564 patent to require propylene glycol, Kemin also informed customers and potential customers that purchasing PIVEG products could put companies at risk of infringement despite the fact that PIVEG provided a sample of product to Kemin wherein no propylene glycol was present.  PIVEG argues evidence to support this amendment came to light during discovery of the bifurcated, infringement-related claims.

g.   PIVEG supplements its cause of action (Claim VII), based on Kemin's practice of knowingly false marking products with a patent number in violation of 35 USC § 292.

h.   PIVEG's amended counterclaims also delete the allegation of trade-mark tying arrangements and delete a request for declaratory judg-ment that the '714 and '564 are invalid and not infringed.

i.   PIVEG adds general amendments to the language of its counter-claims to better conform to the elements of each cause of action.

PIVEG contends the amended and supplemented counterclaims should not necessitate much more discovery by PIVEG (other than the discovery previously bifurcated by the Court).  PIVEG further asserts that the amendment would not be prejudicial to Kemin as most of the information pertaining to the amended and supplemented counterclaims is in Kemin's control.

18

While there is no absolute or automatic right to amend one's pleading, <u>see</u> <u>Deutsche Fin. Servs. Corp. v. BCS Ins. Co.</u>, 299 F.3d 692, 700 (8th Cir. 2002), in the Eighth Circuit[5] a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Sanders v.</u> <u>Clemco Indus.</u>, 823 F.2d 214, 216 (8th Cir. 1987); <u>see also</u> <u>Deutsche Fin. Servs.</u> <u>Corp.</u>, 299 F.3d at 700 (undue delay and prejudice); <u>Grandson v. Univ. of Minn.</u>, 272 F.3d 568, 575 (8th Cir. 2001) (futility of amendment).  Kemin resists PIVEG's motion for leave to amend, claiming first the proposed amendments create undue delay and cause prejudice and second that the alleged counterclaims are futile.

### 1. Undue Delay and Prejudice

As noted above, the Court may deny a requested leave to amend for undue delay and prejudice.  <u>Sanders</u>, 823 F.2d at 216.  In addition, "[w]hen the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order."  <u>Dishman v. American General Assurance</u>, 187 F. Supp. 2d 1073 (N.D. Iowa 2002) (quoting <u>In re Milk Prods. Antitrust Litig.</u>, 195 F.3d 430, 437 (8th Cir. 1999).  Delay alone is not reason to deny leave to amend; however, the delay must

---

[5] The appropriate standard of review provides that the discernable law of the local Circuit should be applied.  <u>See, e.g.</u>, <u>Panduit Corp. v. All States Plastic Mfg.</u> <u>Co.</u>, 744 F.2d 1564, 1574-75 (Fed. Cir. 1984).

have resulted in unfair prejudice to the party opposing the amendment.  <u>Sanders</u>, 823 F.2d at 217.

Kemin contends that because PIVEG's motion for leave to amend comes nearly two years after the deadline for amendment has passed, over a year since the close of discovery, and in the midst of pending dispositive motions, it should be denied.  <u>See</u> <u>Deutsche Fin. Servs.</u>, 299 F.3d at 700.  Kemin argues PIVEG has no justifiable explanation for its failure to amend its pleadings in a timely manner and cannot show good cause for its belated amendments.  PIVEG asserts the information for its amendments came from discovery on the infringement-related claims; however, such discovery closed March 22, 2004, and PIVEG is only just now moving to amend based on information it has had for over one year.  In addition, Kemin asserts that where a party has filed a dispositive motion and the opposing party has resisted it, denial of leave to amend is proper.  <u>See</u> <u>St. Paul Reinsurance Co., Ltd., CAN v. Commercial Fin. Corp.</u>, 144 F. Supp. 2d 1057, 1068 (N.D. Iowa 2001) (citing <u>Moldea v. New York Times Co.</u>, 793 F. Supp. 338, 338 (D.C. Cir. 1992)).[6]

Kemin also asserts the amendments cause prejudice due to the changing of a claim for violation of a noncompete to violation of a nondisclosure and because its patent misuse and false marking allegations are patent-related claims that should have

---

[6] As PIVEG points out, it filed the present motion to amend contemporaneous with its resistance to Kemin's first motion to dismiss.  PIVEG also contends that Kemin jumped the gun in filing the motions to dismiss without waiting to consult with Magistrate Judge Shields as the Court had instructed.

been raised in the now-adjudicated patent suit.  Indeed, patent misuse is an affirma-

tive defense that should generally be pleaded in conjunction with the patent portion of

the case.  See Senza Gel Corp. v. Seiffhart, 803 F.2d 661 (Fed. Cir. 1986) ("Misuse

relates to enforceability and 35 U.S.C. 282(1) lists unenforceability as a defense that

must be pleaded in any action involving validity or infringement.").  In addition,

Kemin asserts that PIVEG's new false marking allegation relates directly to the

asserted patent claims and would require a new jury to once again apply the construed

claims of the patents-in-suit.  Given the overlap of these claims with the patent issues

already decided, Kemin asserts that PIVEG's attempts to raise these claims now

would be wholly prejudicial to Kemin and would be a waste of judicial resources.

PIVEG counters that the amended and supplemented counterclaims will not

cause any delay in this matter as previously conducted discovery need not be

reopened and the trial ready date from the proposed scheduling order need not be

changed.  In any event, PIVEG asserts that if the scheduling order needs to be

modified (which PIVEG denies), good cause exists.  Specifically, PIVEG contends the

timing of its motion to amend is the result of waiting to conclude the post-trial matters

in the infringement portion of the case.  PIVEG also states its amendments are pri-

marily for clarity,[7] pose no unfair surprise to Kemin, and are based on information

---

[7] If the amendments were merely for purposes of clarity, however, then
Kemin's motions to dismiss would apply equally to either the original counterclaims or
the counterclaims as amended.  This will be discussed further below in the Court's
analysis of Kemin's futility arguments and the arguments made in support of Kemin's
motion to dismiss.

discovered during the infringement portion of the case and within Kemin's control. Finally, PIVEG contends Kemin fails to identify any prejudice it will suffer, especially considering no additional discovery will be required, other than that bifurcated or under Kemin's control.

### 2.    Futility

The Eighth Circuit has held that "'futility constitutes a valid reason for the denial of a motion to amend.'"  K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002) (quoting Knapp v. Hanson, 183 F.3d 786, 790 (8th Cir. 1999)); see also Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir. 2002) ("Leave to amend should be denied if the proposed amended pleading would be futile."). "Although leave to amend a complaint 'should be freely granted,' it may be denied if the proposed amended pleading would be futile." Ingrim v. State Farm Fire & Cas. Co., 249 F.3d 743, 745 (8th Cir. 2001).  Thus, a court may deny a motion for leave to amend for futility if the proposed amendments would not save the party's claim from dismissal.  See Mississippi Revival, Inc. v. City of Minneapolis, Minn., 319 F.3d 1013, 1018 (8th Cir. 2003) (finding court did not abuse discretion in denying motion to amend where "the proposed amended claims as pleaded would be futile").  Kemin goes on to argue, without presenting an exhaustive list of the perceived deficiencies in PIVEG's amended counterclaims, that pursuit of the counterclaims would be futile.[8]

---

[8] For example, PIVEG's first two counterclaims seek a declaratory judgment that the '714 and '564 patents are unenforceable.  This Court has already ruled both of the patents-in-suit are enforceable as part of its order on post-trial motions.

### a.   Kemin's Futility Arguments

#### i.   Counterclaim III: Unfair Competition Based on the Lanham Act

Kemin asserts that PIVEG's additional and supplemental unfair competition allegations based upon the Lanham Act in Counterclaim III do not support an unfair competition counterclaim as a matter of law.  To successfully plead an unfair competition claim under the Lanham Act, 15 U.S.C. § 1125, PIVEG must allege the following: (1) that Kemin made a false or misleading statement of fact in commercial advertising or promotion; (2) that the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that Kemin caused the statement to enter interstate commerce; (5) that the statement results in actual or probable injury to PIVEG; and (6) that the marketplace activity must have been undertaken in bad faith.  Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1348 (Fed. Cir. 1999).

Kemin asserts that PIVEG's amended counterclaim satisfies none of these elements.  According to Kemin, PIVEG fails to allege that any statement deceived or was likely to deceive a particular audience, influenced purchasing decisions, was transmitted in interstate commerce, or that Kemin's actions were done in bad faith. Kemin further contends the inferences PIVEG suggests are not reasonable.  Because PIVEG fails to state a claim under the Lanham Act in this counterclaim, Kemin requests the Court deny leave to amend.  See Genlyte Thomas Group LLC v. Nat'l

23

Serv. Indus., Inc., 262 F. Supp. 2d 753, 757 (W.D. Ky. 2003) (dismissing claim of unfair competition based on false and misleading description).

### ii.   Counterclaim IV: Fraudulent Procurement of Patent

Kemin asserts that PIVEG's additional and supplemental unfair competition allegations of fraudulent procurement of patent in Counterclaim IV do not state an actionable Walker Process claim.  Under Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., enforcement of a patent procured by fraud may provide a basis for antitrust liability if the requirements for a valid antitrust claim have otherwise been met.  Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965).  The antitrust plaintiff must show that a deliberate fraud was perpetrated on the Patent Office, id. at 177, a heavier burden than is necessary to show that a patent is unenforceable due to inequitable conduct.  See Noblepharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1071 (Fed. Cir. 1998) (stating a "finding of Walker-Process fraud requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct"); see also C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1364 (Fed. Cir. 1998) (explaining why Walker Process claims require proof of common law intentional fraud, not just inequitable conduct).

Since PIVEG was unable to prove inequitable conduct, Kemin argues it would be impossible for PIVEG to meet the higher threshold to prove Walker Process fraud.  Moreover, Kemin asserts that this counterclaim also fails because PIVEG has not pleaded the elements of intentional fraud with particularity – a specific requirement for

a Walker Process claim.  See Miller Pipeline Corp. v. British Has PLC, 69 F. Supp.

2d 1129, 1135 (S.D. Ind. 1999).

### iii.   Counterclaim V: Sham Litigation

Kemin asserts that PIVEG's additional and supplemental allegation of sham

litigation in Counterclaim V is without merit.  See THK America, Inc. v. NSK, Ltd.,

157 F.R.D. 660, 663 (N.D. Ill. 1994) (denying leave to amend where antitrust

counterclaim based on sham litigation did "not state a claim upon which relief may be

had").  "Sham litigation must constitute the pursuit of claims so baseless that no

reasonable litigant could realistically expect to secure favorable relief."  Prof'l Real

Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 62 (1993).  Thus,

"[t]he existence of probable cause to institute legal proceedings precludes a finding

that an antitrust defendant has engaged in sham litigation."  Id.

Kemin asserts that despite the jury's finding of noninfringement of the '714

patent, there existed substantial evidence of infringement such that PIVEG cannot

meet the "no reasonable litigant" standard.  In fact, this Court denied PIVEG's motion

for summary judgment prior to trial on this issue.  See Beckman Instruments, Inc. v.

LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("In particular, we find it

difficult to agree that the inequitable conduct defense was 'baseless' when it survived

a motion for summary judgment and was rejected only after findings were made on

disputed facts.").  Moreover, this Court denied PIVEG's application for attorneys'

fees after trial finding "no indication of bad faith on the part of Kemin in bringing this

lawsuit."  May 9, 2005 Order at 25.  Kemin asserts that this finding of no bad faith

under section 285 precludes any claim of sham litigation.  See Victus, Ltd. v. Collezione Europa U.S.A., Inc., 26 F. Supp. 2d 772, 788 (M.D.N.C. 1998) (holding that fees can be awarded under section 285 for *either* objective or subjective bad faith whereas sham litigation requires a showing of *both* objective and subjective bad faith).

PIVEG also alleges Kemin issued press releases, sent notices, and contacted certain companies regarding infringement of Kemin's patents.  Such activities are, however, protected unless they were undertaken with an improper motive and without probable cause, i.e., objectively baseless.  See, e.g., Matsushita Elecs. Corp. v. Loral Corp., 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (extending Noerr-Pennington immunity to infringement warning letters sent to customers of defendants) (quotations omitted); Cardtoons, L.C. v. Major League Baseball Players Ass'n, 182 F.3d 1132, 1136 (10th Cir. 1999) (extending immunity to letters threatening suit for alleged infringement); Aircapital Cablevision, Inc. v. Starlink Communications Group, 634 F. Supp. 316, 325-26 (D. Kan. 1986) (extending immunity to press releases publicizing the lawsuit and threatening further action).  "A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers." Virginia Panel Corp. v. Mac Panel Co., 133 F.3d 860, 869 (Fed. Cir. 1997) (quoting Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 709 (Fed. Cir. 1992)).  Kemin asserts that this Court's findings to date foreclose a determination that Kemin's assertions of infringement by PIVEG were objectively baseless, and that these allegations are therefore futile and should not be allowed.

26

### iv.   Counterclaim VI: Patent Misuse

Kemin asserts that PIVEG's additional and supplemental allegations of patent misuse in Counterclaim VI is improper.  Counterclaim VI purports to be a damages claim for "patent misuse"; however, Kemin contends that patent misuse is only an affirmative defense to a claim for patent infringement and is not a basis for an award of damages.  See R. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1427 (Fed. Cir. 1997) ("When used successfully, this defense results in rendering the patent unenforceable until the misuse is purged.  It does not, however, result in an award of damages to the accused infringer.").  As such, Kemin contends the amendment is futile and should not be allowed.[9]

### v.   Counterclaim VII: False Marking

Finally, Kemin asserts that PIVEG's additional and supplemental allegations of false marking in Counterclaim VII should also be rejected as futile.  A false marking claim under Section 292 of the Patent Statute requires the marking be for the "purpose of deceiving the public."  35 U.S.C. § 292.  Thus, a violation of the false marking statute requires an evidentiary showing that false marking or mismarking was for the purpose of deceiving the public.  Arcadia Mach. & Tool Inc. v. Sturm, Ruger & Co., 786 F.2d 1124, 1125 (Fed. Cir. 1986).  Kemin asserts that PIVEG has put forth no factual basis for this assertion and, since discovery on the patent issues has ended, any bases for concluding Kemin attempted to deceive the public would be

---

[9] In addition, Kemin reiterates that patent misuse is related to the already adjudicated patent issues and is not an independent basis for antitrust liability.

available.  Moreover, as already noted, Kemin argues that the false marking claim is

patent related and to allow such a claim now would violate both the bifurcation order

and the scheduling order.

### b.   PIVEG's Arguments Against a Finding of Futility

In countering Kemin's futility arguments, PIVEG merely claims that "[t]hese

arguments address the merits of PIVEG's counterclaims . . . [and] are not appropriate

for a motion for leave to amend."  PIVEG contends it has pleaded all required allega-

tions in conformance with the pleading requirements.  PIVEG asserts the Court

should not allow Kemin to argue a motion to dismiss based on the substance of the

claims.  In short, PIVEG contends the issues Kemin raises in arguing futility have

nothing to do with the Court's decision to grant PIVEG leave to amend.

Despite PIVEG's arguments to the contrary, Kemin has provided solid and per-

suasive arguments as to the futility of PIVEG's amended counterclaims.  Kemin

demonstrates, and the Court finds, that PIVEG fails to plead all the elements

necessary for the claims, particularly the Lanham Act and Walker Process claims.

Also, the law of the case forecloses some of the pleaded counterclaims, specifically

those regarding enforceability and sham litigation.  Still other counterclaims are

misplaced as antitrust/unfair competition counterclaims due to their relation to the

patent issues already decided, specifically the patent misuse and false marking claims.

PIVEG has not demonstrated that such proposed counterclaims are not futile beyond

making, without support, a base assertion that its amended counterclaims meet the

pleading requirements. Accordingly, the Court finds the amended counterclaims futile under the law of the case and as argued by Kemin.

In addition, as to the unfair competition counterclaim related to the alleged violation of a nondisclosure agreement, the Court finds such amendment untimely and prejudicial to Kemin. PIVEG had in its possession the document purporting to include a noncompete agreement since nearly the inception of this action. This document ultimately was proven to only include a possible nondisclosure agreement when translated, an action that PIVEG could have undertaken at any time. At the very least, PIVEG was aware of the contents of the document at the deposition of Mr. Espinoza in January 2004. At no time did PIVEG move to amend its counter-claim as related to the noncompete/nondisclosure agreement. Significantly, even after being given opportunity under the safe harbor provision of Rule 11, PIVEG chose to support its original allegations of a noncompete agreement before finally abandoning this allegation with the current proposed amendments. Under these circumstances, the Court determines any amendment to include a nondisclosure agreement is untimely and unfairly prejudicial to Kemin.

These same arguments also apply to a lesser extent to PIVEG's proposed new counterclaims alleging patent misuse and false marking. Despite PIVEG's statements to the contrary, PIVEG did in fact make these arguments during the patent phase of this action, particularly in its motion for summary judgment. It is both untimely and prejudicial to Kemin to grant PIVEG another opportunity to make these arguments,

particularly in light of the law of the case finding the '714 patent both valid
and enforceable.

In short, even though the Court has a strong inclination to grant motions to
amend, Kemin has made a convincing argument against granting the motion.
Accordingly, the Court will deny PIVEG's motion to amend and supplement its
counterclaims based on the determinations that the proposed amendments are either
untimely and prejudicial, futile, or both.

## C.    Plaintiffs' Motion to Dismiss

In denying PIVEG's motion to stay and PIVEG's motion to amend, the Court
has left ripe both of Kemin's motions to dismiss.  The first motion asserts PIVEG's
unfair competition and antitrust counterclaims should be dismissed under Rules 12(c)
and 16 given the findings that the '714 and '564 patents are valid and enforceable.

### 1.    Standards Under Rules 12(c) and 16

Rule 12(c) provides that  "[a]fter the pleadings are closed but within such time
as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R.
Civ. P. 12(c).  Judgment on the pleadings is only appropriate when the moving party
has clearly established no material issue of fact remains and that it is entitled to judg-
ment as a matter of law.  Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir.
2002); Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001).  Under this strict
standard, the Court must accept as true all of the facts pleaded by the nonmoving
party.  Lion Oil Co. v. Tosco Corp., 90 F.3d 268, 270 (8th Cir. 1996).  In addition,
the Court must "grant all reasonable inferences from the pleadings in the favor of the

non-moving party." Potthoff, 245 F.3d at 715 (citing Nat'l Car Rental Sys., Inc. v.

Computer Assocs. Int'l, Inc., 991 F.2d 426, 428 (8th Cir. 1993)); see also Lion Oil

Co., 90 F.3d at 270.  The Court cannot, however, accept a party's unsupported

conclusions or interpretations of law, United States v. AVX Corp., 962 F.2d 108, 115

(1st Cir. 1992) ("[A] reviewing court is obliged neither to 'credit bald assertions,

periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' . .

. nor to honor subjective characterizations, optimistic predictions, or problematic

suppositions.") (citations omitted), and a party will not be able to defeat a motion for

judgment on the pleadings by asserting inadmissible or clearly false facts.  See

Duhame v. United States, 119 F. Supp. 192, 195 (Ct. Cl. 1954) (holding that a party

opposing a motion for judgment on the pleadings "cannot defeat its use by merely

alleging that an issue of fact exists"and that "[w]hile a motion for judgment on the

pleadings admits all facts well pleaded, it does not admit, inter alia, facts pleaded

which would be inadmissible in evidence at trial").

　　　When considering a motion for judgment on the pleadings, a court generally

must consider only those materials in the pleadings.  Porous Media Corp. v. Pall

Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see also United States v. $244,320.00 in

United States Currency, 295 F. Supp. 2d 1050, 1055 (S.D. Iowa 2003).  The Court

may, however, consider materials that are part of the public record and do not

contradict the pleadings, as well as those materials that are necessarily embraced by

the pleadings.  Porous Media Corp., 186 F.3d at 1079 (quoting Missouri ex rel. Nixon

v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999), and Piper Jaffray Cos.

31

v. Nat'l Union Fire Ins. Co., 967 F. Supp. 1148, 1152 (D. Minn. 1997)); see also

Faibisch, 304 F.3d at 802-03; Hatch v. TIG Ins. Co., 301 F.3d 915, 916 n.2 (8th Cir.

2002); 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299

(1990) (noting "matters of public record, orders, items appearing in the record of the

case, and exhibits attached to the complaint" may be considered by the court in a

motion for judgment on the pleadings).

 Kemin asserts also that this motion seeks to identify and reduce the nonpatent

issues, if any, that remain for trial.  Rule 16 imposes a duty on each party to assist the

Court in defining the issues for trial.  See Fed. R. Civ. P. 16; see also In re Control

Data Corp. Sec. Litig., 933 F.2d 616, 621 (8th Cir. 1991) (citing Erff v. MarkHon

Indus., Inc., 781 F.2d 613, 617 (7th Cir. 1986)).  Rule 16 further directs the parties to

formulate and simplify the issues "in the hope of promoting efficiency and conserving

judicial resources by identifying the real issues prior to trial, thereby saving time and

expense for everyone."  In re Control Data Corp. Sec. Litig., 933 F.2d at 621 (citing

advisory committee notes, subd. c (1983)); see also Fed. R. Civ. P. 16(c)(1)).  Thus,

Rule 16 may be used to simplify the issues and eliminate frivolous claims or defenses.

Porter-Cooper v. Dalkon Shield Claimants Trust, 49 F.3d 1285, 1286 (8th Cir. 1995)

(finding that Rule 16(c) authorizes the court to "take appropriate action with respect

to . . . the formulation and simplification of the issues . . . [and] the avoidance of

unnecessary proof and of cumulative evidence").

## 2.    Judicial Notice of Prior Determinations

The Court will first take judicial notice of the jury verdict and this Court's own post-trial determinations that the '714 and '564 patents are valid and enforceable.[10] This is the law of the case.  The doctrine of the law of the case "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  <u>Little Earth of the United Tribes, Inc. v. U.S. Dept. of Hous. and Urban Dev.</u>, 807 F.2d 1433, 1441 (8th Cir. 1986) (quoting <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983)); <u>see also</u> <u>Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.</u>, 48 F.3d 1066, 1070 (8th Cir. 1995) (noting that doctrine is only applicable to final judgments and not interlocutory orders).  The purpose of the doctrine is to prevent "relitigation of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency."  <u>Little Earth of the United Tribes, Inc.</u>, 807 F.2d at 1441; <u>see also</u> <u>United States v. Bartsh</u>, 69 F.3d 864, 866 (8th Cir. 1995).

The Court made certain determinations, based in part on the jury verdict, in its Order on Post-Trial Motions.  All such determinations related to the patent issues were deemed final pursuant to Rule 54(b) by the Court in its May 9, 2005 Order.  Accordingly, the parties and the Court are entitled to take these findings as the law of the case.  A pending appeal does not affect this determination.  Accordingly, all patent issues

---

[10] The jury only provided advisory findings on the issue of enforceability.  This Court then undertook its function to determine whether the patents were unenforceable, concluding in all instances that the patents-in-issue are indeed enforceable.

previously determined are hereby judicially noticed as the law of the case and binding in this Court's analysis of the pending motion to dismiss Defendant's counterclaims.

### 3. Substantive Arguments for Dismissal of Counterclaims

First and foremost, PIVEG's unfair competition counterclaims rest in part on the presumption that the '714 patent is invalid and unenforceable.  As the '714 patent has been found valid and enforceable, any claims requiring a finding of invalidity or unenforceability must be dismissed.  This would include PIVEG's unfair competition (Lanham Act) counterclaim and its <u>Walker Process</u> counterclaim (procuring the '714 patent by fraud).[11]  The Court finds that PIVEG's unfair competition counterclaims based on the Lanham Act and <u>Walker Process</u> are unsupportable as a matter of law because they are premised on a finding that the patents-in-suit are invalid and unenforceable.

Kemin's arguments against the sham litigation claims made in the original counterclaims parallel and expand upon those made in Kemin's arguments that a sham litigation counterclaim is futile in response to PIVEG's motion for leave to amend.[12]  Likewise, the arguments made by Kemin in its motion to dismiss regarding press

---

[11] <u>See</u> discussion, <u>supra</u>, regarding the elements of Lanham Act claim and a <u>Walker Process</u> claim and the elements of inequitable conduct.  These claims were sufficiently discussed in relation to Kemin's futility arguments in its resistance to PIVEG's motion to amend and will not be repeated here.

[12] <u>See</u> discussion, <u>supra</u>, regarding the elements of a sham litigation claim. Again, this claim was sufficiently discussed in relation to Kemin's futility arguments in its resistance to PIVEG's motion to amend and will not be repeated here.

releases, informing customers of potential infringement, and Kemin's intent to enforce are the same as those made in arguing such claims would be futile as amended.[13]  The Court repeats its findings that the present infringement action was not "objectively baseless" or fraudulent.  Thus, enforcement of Kemin's valid patent rights cannot be the basis for liability.  See Clontech Labs., Inc. v. Invitrogen Corp., 263 F. Supp. 2d 780, 794 (D. Del. 2003).  Accordingly, these claims must be dismissed as a matter of law.

Finally, PIVEG essentially concedes its allegations fail to support its claims relating to trademark agreements, either as an improper tying arrangement or as an illegal exclusive dealing arrangement, as the proposed amended counterclaims drop any allegations on these issues.  Furthermore, as Kemin notes, a finding of inequitable conduct on its own is insufficient to establish antitrust liability.  As PIVEG cannot even establish this much, the Court finds dismissal of PIVEG's antitrust and unfair competition counterclaims is appropriate.

The Court does note that PIVEG's resistance to Kemin's motion to dismiss addresses the viability of its proposed amended counterclaims, not its counterclaims as currently pleaded before the Court.  In so arguing, PIVEG contends its newly asserted counterclaims "moot many, but not all, of Kemin's arguments."  In addition, PIVEG

---

[13] See discussion, supra, regarding patent enforcement through press releases, customer contact, etc.  Once agin, these claims were sufficiently discussed in relation to Kemin's futility arguments in its resistance to PIVEG's motion to amend and will not be repeated here.

makes many of its arguments relying on the foundational assumption that the Federal Circuit is going to reverse all of this Court's determinations related to the enforce-ability of the '714 patent.  This approach all but disregards this Court's determina-tions, which make up the current law of the case.  PIVEG's failure to adequately respond to Kemin's motion to dismiss as related to the original counterclaims does not prevent this Court from ruling on that motion, especially considering many of the arguments parallel those made by Kemin in arguing futility in resistance to PIVEG's motion to amend.  PIVEG has had ample opportunity to respond to Kemin's con-tentions that its counterclaims are deficient as a matter of law.

The Court finds, for the reasons noted above, that the counterclaims identified by Kemin in its first motion to dismiss must be dismissed as a matter of law.  The law of the case acts as *res judicata* in relation to those counterclaims premised on the finding that the patents-in-suit are invalid and unenforceable.  As the Court has pre-viously determined otherwise, PIVEG's counterclaims cannot stand.  This determina-tion is made on the basis of the counterclaims without amendment, having denied the motion to amend; however, the Court notes that even had PIVEG's amendments been allowed, the identical result would obtain.  Thus, with or without the proposed amendments, the Court concludes that there is no material issue and Kemin is entitled to judgment as a matter of law on  PIVEG's counterclaims.  Therefore, the Court must dismiss all of the counterclaims identified by Kemin in its first motion to dismiss, i.e., all counterclaims save the unfair competition claim based on violation of a non-compete agreement, and counterclaims I and II.

36

**D.     Plaintiffs' Motion to Dismiss Under Rule 11**

Subsequent to filing its first motion to dismiss, Kemin filed a motion to dismiss under Rule 11.  This motion is directed to the unfair competition claim based on violation of a noncompete agreement.  Under this motion, Kemin moves to dismiss PIVEG's unfair competition and antitrust counterclaims relating to alleged violation of a noncompete agreement.  Kemin seeks to use the sanction provisions of Rule 11 as the vehicle for dismissal of this counterclaim.

The Court has already determined the motion for leave to amend this counter-claim must be denied as untimely and unfairly prejudicial.  In seeking the amendment, PIVEG has effectively conceded the claim founded upon an alleged noncompete agreement was not grounded in fact.  While that set of circumstances might resolve any remaining issues with regard to the continued viability of the counterclaim, PIVEG has argued there is essentially no difference between a noncompete agreement and a nondisclosure agreement as a basis for this claim.  For that reason, and as an alternative basis for the Court's decision on this matter, the Rule 11 motion will be determined.

**1.     Rule 11**

Under Rule 11, when a party presents pleadings to the Court, it is certifying that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Violations of Rule 11 are evaluated under the "objective reasonableness standard".

Isakson v. First Nat'l Bank, Sioux Falls, 985 F.2d 984, 986 (8th Cir. 1993).  Hence, the inquiry is "whether the pleading was frivolous, groundless, or advanced for an improper purpose."  Id. (citations omitted).

Rule 11 also contains a safe harbor provision wherein a party moving under the Rule must provide the opposing party with a copy of the allegations in support of the motion.  Fed. R. Civ. P. 11(c)(1).  The opposing party then has 21 days to correct or withdraw the offending pleading.  Id.  Upon a failure to do so, the moving party may then file the Rule 11 motion for the Court's consideration.  Id.

### 2.   Arguments for Violation of Rule 11

Briefly, Kemin asserts that PIVEG's allegation that Kemin hired PIVEG employees in violation of a noncompete agreement is without evidentiary support. Kemin contends that there is no noncompete and the only possible violation would be of a nondisclosure agreement, which is vastly different than a noncompete.  Kemin contends that PIVEG's counsel had the document in controversy and would have known there was no noncompete agreement had counsel had the document translated. Moreover, Kemin asserts that PIVEG knew in January 2004 at the latest that the document in question did not contain a noncompete agreement as alleged.  Kemin asserts that based on this time line, PIVEG made and continued to assert violation of a noncompete without evidentiary support.  Consequently, Kemin requests the Court dismiss those counterclaims dealing with the noncompete agreement as a sanction for PIVEG's Rule 11 violation for making allegations without evidentiary support.

Initially, PIVEG vigorously defended its counterclaim even after being given the time to withdraw or change as required under Rule 11.  PIVEG then reversed course in asserting its proposed amendments.  In fact, PIVEG's amended counterclaim drops the allegations of violation of a noncompete, instead alleging violation of a non-disclosure agreement.

PIVEG does make an argument that outstanding discovery must be completed since the deposition of former PIVEG employee Manolo Rojo and his Kemin super-visor(s) were bifurcated and have not been conducted.[14]  Kemin counters that this assertion has no merit based on the fact that there is no noncompete agreement.  This fact was arguably conceded by PIVEG when making this argument, as PIVEG refers to a nondisclosure and not a noncompete.

Despite PIVEG's arguments that the difference between a noncompete and a nondisclosure is nothing more than form over substance, the Court finds an important substantive difference in the claims and the evidence necessary to support them.  The Court further finds PIVEG had ample opportunity to discover the discrepancy between its claims and its evidence and should have known by the end of discovery that the document in question did not contain a noncompete agreement.  PIVEG then had ample opportunity to correct its offending allegations.  The Court also finds no further discovery is necessary to decide this issue in the present motion.

---

[14] Actually asserted in PIVEG's resistance to Kemin's first motion to dismiss.

The Court does recognize, however, the circumstances under which the parties were operating during those stages of the proceedings.  Both sides were concentrating on the upcoming trial on the patent issues, and as a stay was in place regarding further discovery on this particular counterclaim, the parties' focus was not on the counter-claims in general, and this claim in particular.  The matter is confounded, however, by PIVEG's failure to correct its faulty allegations when presented with the present Rule 11 motion.  This failure is exacerbated by PIVEG's course of conduct in resisting the motion and then later essentially abandoning the basis for the original counterclaim in its proposed amended counterclaims.  Accordingly, the Court finds a violation of Rule 11 by PIVEG and reluctantly concludes sanctions are appropriate.

### 3.    Sanctions Under Rule 11

Kemin asserts that dismissal with prejudice of the counterclaim is the appro-priate sanction for PIVEG's Rule 11 violation.  Upon a finding of a Rule 11 violation, imposition of sanctions is mandatory, but the type of sanction is discretionary with the Court.  See Carman v. Treat, 7 F.3d 1379, 1382 (8th Cir. 1993); Crookham v. Crookham, 914 F.2d 1027, 1029 (8th Cir. 1990).  Dismissal with prejudice has been found in some cases to be a proper sanction for a Rule 11 violation.  See, e.g., Carman , 7 F.3d at 1382; Peerless Indus. Paint Coatings Co. v. Canam Steel Corp., 979 F.2d 685, 687 (8th Cir. 1992); Joiner v. Delo, 905 F.2d 206, 208 (8th Cir. 1990); American Inmate Paralegal Assoc. v. Cline, 859 F.2d 59, 62 (8th Cir. 1988).  In addition, Kemin seeks reasonable attorneys' fees and costs expended in relation to the present motion.  See Fed. R. Civ. P. 11(c)(1)(A) (permitting the court to "award the

prevailing party on the motion the reasonable expenses and attorney's fees incurred in presenting . . .the motion").

The Court hereby finds dismissal with prejudice of the offending counterclaim is the appropriate sanction. PIVEG asserted, and later defended, its allegations that Kemin violated a nonexistent noncompete agreement. PIVEG later abandoned these claims, but only after the parties fully briefed the present motion. The Court declines, however, to order any monetary sanction in the form of attorneys' fees or expenses. Again, the Court notes the circumstances and environment under which the parties were operating in this action. The issues are complex and time-consuming and PIVEG's violation of Rule 11 does not warrant the sanction entailed in an award of attorneys' fees and expenses.

## CONCLUSION

As detailed above, PIVEG's request for a stay fails under the factors used to determine whether such a stay is appropriate and so PIVEG's motion to stay the counterclaims (Clerk's No. 361) must be **denied**. As to the motion to amend, Kemin has demonstrated that allowing amendment to a majority of the counterclaims would be futile. As to the sole amended counterclaim that would not be futile, i.e., the unfair competition claim based on the nondisclosure agreement, the Court finds that amendment untimely and prejudicial to Kemin. Accordingly, PIVEG's motion to amend and supplement its counterclaims (Clerk's No. 360) must be **denied**.

The Court next analyzed Kemin's motions to dismiss the original counterclaims. For the foregoing reasons, Kemin's first motion to dismiss (Clerk's No. 344)

41

must be **granted**, and PIVEG's counterclaims identified in the motion must be dismissed.  Finally, Kemin's Rule 11 motion to dismiss (Clerk's No. 350) must be **granted**, and the unfair competition counterclaim based on violation of a noncompete agreement must be dismissed as a sanction for PIVEG's violation of Rule 11.  The Court finds no other sanctions are warranted.

PIVEG's counterclaims I and II were not the subject of Kemin's motions to dismiss.  While PIVEG indicated its intention to delete the requests for declaration that the '714 and '564 patents are invalid and noninfringed, that result is not realized given the Court's ruling on the motion for leave to amend the counterclaims.  While these counterclaims are seemingly impacted by the jury verdict and this Court's post-trial orders, that question is left unresolved on the current record.  Accordingly, the parties are directed to jointly report to the Court within two weeks of the date of this order to advise if counterclaims I and II remain before the Court, or if those counter-claims can be dismissed and a final judgment entered.

**IT IS SO ORDERED.**

Dated this 10th day of August, 2005.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT